UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RANDAL BENDERSON, TRUSTEE, *et al.*,

      **Plaintiffs,**

                                  **Case No. 2:12-cv-525**
                                  **JUDGE SARGUS**
      v.                             **Magistrate Judge Kemp**

MARQUEE CINEMAS-OH, INC. *et al.*,

      **Defendants.**

## OPINION AND ORDER

    This matter is before the Court on the parties' cross motions for partial summary judgment. The Court **GRANTS IN PART and DENIES IN PART** Plaintiffs' motion for partial summary judgment and **GRANTS IN PART and DENIES IN PART** Defendants' motion for partial summary judgment.

### I.    POSTURE

    Plaintiffs and Defendants have each filed motions for partial summary judgment. (Docs. 14, 15). Each side has responded and, in the case of Plaintiffs, chosen also to reply. (Docs. 16, 17, 18). The motions, responses, and the solitary reply collectively address three questions: Are Plaintiffs' claims barred by the statute of frauds? Was the lease, that is the subject of this lawsuit, executed in compliance with the relevant laws or does Ohio's statute of conveyances preclude the validity of its stated term? If the statute of conveyances does render the lease invalid as written, what is the proper term of the lease?

## II.   BACKGROUND

The facts in this case are undisputed.  Lessors, Randall Benderson, David Baldauf, and Ronald Benderson, in their capacities as trustees of two trusts, entered into a lease agreement with lessee, Marquee Cinemas-OH, Inc. (Doc. 13, Ex. 1, Lease at 1).  The lease agreement shows that it was "made" on May 13, 2003, that it was signed, at least by Marquee, on May 16, 2003, and that it was to "commence" on October 15, 2003.  *Id.* at 1, 18; (*see also* Doc. 14, Ex. 1, Chait Aff. at ¶ 7).  The evidence in the record reflects that the lessor signed the lease in Buffalo, New York.[1] (Doc. 14, Ex. 1, Chait Aff. at ¶ 4).  The lease pertained to real property in Ohio and, on its face, had "a term of fifteen (15) years." (Doc. 13, Ex. 1, Lease at 1).  However, Defendants paid no rent for any period of time on or after August 1, 2005. (Doc. 6, Answer at ¶ 4).  Marquee Cinemas alleges it was unlawfully and/or constructively evicted from the property prior to that time, but it is undisputed that, at least by December of 2005, Marquee Cinemas no longer possessed the property. *Id.*; (*see also* Doc. 14, Ex. 1, Chait Aff. at ¶ 6).

## III.   STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Id.* at 323.  The

---

[1] The record does not reflect where the lessee signed the lease.

burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Liberty Lobby*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52.

## IV. CHOICE OF LAW

The lease at issue in this case contains a choice of law provision. (Doc. 13, Ex. 1, Lease at 17) ("Lessor and Lessee agree that this Lease shall be governed by the laws of the state in which the Demised Premises are located."). Thus, the question arises, should the Court honor that provision?

Jurisdiction for this case is based upon diversity of the parties,[2] a pled amount in controversy exceeding $75,000, and 28 U.S.C. § 1332. (*See* Doc. 2, Compl. at ¶¶ 3-8, 14, 21, 26, 30; Doc. 6, Answer at ¶¶ 1, 2). Thus, when deciding what law applies, this Court shall apply Ohio choice of law provisions. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). Ohio law provides that choice of law terms in contracts are to be respected

> unless either the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

---

[2] Plaintiffs are citizens, for purposes of 28 U.S.C. § 1332, of New York and Florida while Defendants are citizens of Delaware, Ohio, and West Virginia. (Doc. 2, Compl. at ¶¶ 3-8; Doc. 6, Answer at ¶ 1).

> application of the law of the chosen state would be contrary to the fundamental policy of a state having a greater material interest in the issue than the chosen state and such state would be the state of the applicable law in the absence of a choice by the parties.

*Schulke Radio Prods., Ltd. v. Midwestern Broad. Co.*, 453 N.E.2d 683, syllabus (Ohio 1983). As

Ohio is the state of citizenship of at least one of the Defendants and is the place where the leased

land is situated, the choice of law provision is valid and this Court shall apply Ohio law.

> In diversity cases, the federal courts must apply state law "'in accordance with the then controlling decision of the highest state court.'" *United States v. Anderson County, Tenn.*, 761 F.2d 1169, 1173 (6th Cir. 1985) (quoting *Vandenbark v. Owens-Illinois Glass Co.*, 311 U.S. 538, 543 (1941)); *see Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). If the forum state's highest court has not addressed the issue, the federal court must ascertain from all available data, including the decisional law of the state's lower courts, what the state's highest court would decide if faced with the issue. *See Bailey v. V&O Press Co.*, 770 F.2d 601, 604 (6th Cir. 1985) (citing cases).

*Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 517 (6th Cir. 2001) (parallel citations omitted).

Therefore, in applying Ohio law, the Court shall rule as the Ohio Supreme Court would, as

divined from the decisions of that court, the text of the statute, and, if necessary, lower Ohio

courts and other persuasive precedent.

## V.   DISCUSSION

### A. Statute of Frauds

Ohio Revised Code, section 1335.04 provides that "[n]o lease . . . in . . . lands . . . shall be

assigned or granted except by deed, or note in writing, signed by the party assigning or granting

it, or his agent thereunto lawfully authorized, by writing, or by act and operation of law." *See*

*also, e.g.*, *Ed Schory & Sons v. Francis*, 662 N.E.2d 1074, 1079-80 (Ohio 1996). In this case,

the parties have stipulated to the authenticity and admissibility of the lease and the Court's

review of the same reveals that it is in writing and signed by a representative of the lessors. (*See*

Doc. 13, Ex. 1, Lease at 18 (reflecting a signature by Randall Benderson, trustee of both

lessors)). Accordingly, the lease complies with the statute of frauds and is not invalid for that reason.

### B. Statute of Conveyances

#### 1. Relevant Law

The version of Ohio's statute of conveyances that was operative at the time of the lease provided as follows:

> A deed, mortgage, land contract as referred to in division (B)(2) of section 317.08 of the Revised Code, or lease of any interest in real property and a memorandum of trust as described in division (A) of section 5301.255 of the Revised Code shall be signed by the grantor, mortgagor, vendor, or lessor in the case of a deed, mortgage, land contract, or lease or shall be signed by the settlor and trustee in the case of a memorandum of trust. The signing shall be acknowledged by the grantor, mortgagor, vendor, or lessor, or by the settlor and trustee, before a judge or clerk of a court of record in this state, or a county auditor, county engineer, notary public, or mayor, who shall certify the acknowledgement and subscribe the official's name to the certificate of the acknowledgement.

Ohio Rev. Code § 5301.01(A) (2002); *but see* Ohio Rev. Code § 5301.08 (2002) (excluding from the acknowledgment requirement of section 5301.01 leases for terms not exceeding three years). In short, in order for a lease like this one, with a stated term in excess of three years, to comply with the requirements of Ohio law, it must have been signed by the lessor and that signature must have been notarized or the subject of some other equivalent acknowledgement before a duly authorized official. In this case, it is undisputed that the lease was not. (Doc. 16, P. Re. in Opp. at 1 ("Plaintiffs concede that their signatures on the lease, as landlords, are not acknowledged.")).

However, that is not the end of the inquiry. Ohio law also provides an exception for leases executed outside the State of Ohio:

> All deeds, mortgages, powers of attorney, and other instruments of writing for the conveyance or encumbrance of lands, tenements, or hereditaments situated within this state, executed and acknowledged, or proved, in any other state, territory, or country in conformity with the laws of such state, territory, or country, or in conformity with the laws of this state, are as valid as if executed within this state, in conformity with sections 1337.01 to 1337.03, inclusive, and 5301.01 to 5301.04, inclusive, of the Revised Code.

5

Ohio Rev. Code § 5301.06 (1953). This case turns on how this section is analyzed.

### 2. Analysis of Section 5301.06

The Court is unable to find any Ohio Supreme Court opinion analyzing section 5301.06 of the Ohio Revised Code or its predecessor, section 8516 of the Ohio General Code. However, the Ohio Supreme Court has frequently explained, "The first rule of statutory construction is to look at the statute's language to determine its meaning. If the statute conveys a clear, unequivocal, and definite meaning, interpretation comes to an end, and the statute must be applied according to its terms." *Columbia Gas Transmission Corp. v. Levin*, 117 Ohio St. 3d 122, 2008-Ohio-511, 882 N.E.2d 400, at ¶ 19 (citing *Lancaster Colony Corp. v. Limbach*, 524 N.E.2d 1389, 1390 (Ohio 1988)). Therefore, the Court turns to the text of section 5301.06.

"All . . . instruments of writing for the conveyance or encumbrance of lands . . . situated within this state, <u>executed **and** acknowledged, **or** proved</u>, in any other state . . . <u>in conformity with the laws of such state . . . **or** in conformity with the laws of this state</u>, are . . . valid . . . ." *Id.* (emphasis added). In other words, a lease will be valid in Ohio, for property situated in Ohio, even though it is signed by the lessor outside of Ohio if and only if:

1. It is "executed **and** acknowledged" by the lessor in conformity with the laws of the state of signing; OR

2. It is "proved" in conformity with the laws of the state of signing; OR

3. It is executed outside of Ohio but "in conformity with the laws of" Ohio.

Ohio Rev. Code § 5301.06 (1953).

Plaintiffs argue that options 1 and 3 are the same under this interpretation and thus, that the rule against superfluities forbids this interpretation. (Doc. 18, P. Reply at 2 (quoting *In re Adoption of M.B.*, 131 Ohio St. 3d 186, 2012-Ohio-236, 963 N.E.2d 142, at ¶ 19) (citing Ohio Rev. Code § 1.47(B))). In other words, if satisfaction of option 1 requires execution and

6

acknowledgment, then one who satisfies option 1 will also always satisfy option 3 because option 3 only requires compliance with Ohio law and section 5301.01 requires only execution and acknowledgment. *Id.* Since options 1 and 3 are satisfied by the same requirements, so the argument goes, one or the other is superfluous.

However, in theory, a foreign state could have a different view from Ohio as to what constitutes acknowledgment – for example, different notarial laws and customs. Thus, a document could be "acknowledged . . . in conformity with the laws of [a foreign] state" yet not be considered acknowledged in Ohio so as to fulfill the requirements of section 5301.01. Ohio Rev. Code. § 5301.06. In that example, options 1 and 3 would have different requirements. Moreover, Ohio Revised Code, section 1.47, on which Plaintiffs rely, reads, "In enacting a statute, it is presumed that . . . [t]he entire statute is intended to be effective . . . ." Ohio Rev. Code § 1.47(B) (1972) (emphasis added). When section 5301.06 was enacted in 1953, section 5301.01 (which was enacted simultaneously) required both acknowledgment and witnesses. *See* Ohio Rev. Code § 5301.01 (effective Oct. 1, 1953) *and* Ohio Rev. Code § 5301.06 (effective Oct. 1, 1953). Thus, when it was enacted, all parts of section 5301.06 had robust meaning: Option 1 allowed a lessor to dispense with the witness requirement so long as the execution was acknowledged in accordance with the laws of the foreign state. Option 3 gave validity to contracts executed according to the laws of Ohio, even in foreign states. Though section 5301.01 was amended, effective in 2002, to remove the witness requirement, section 5301.06 continues to mean what it says – a document must be "executed and acknowledged . . . in any other state . . . in conformity with the laws of such state . . . ." *See* Ohio Rev. Code § 5301.06; H.B. 279. 124th Gen. Assemb., Reg. Sess. (Ohio 2001-02). In short, even if section 5301.06 were redundant (and the Court's example of differing notarial customs shows that it need not be) that would not mean

7

that reading the plain language of the statute is no longer the proper way to interpret it –

particularly not when it is apparent, in accordance with section 1.47(B), that section 5301.06 was

not at all redundant when it was <u>enacted</u>.

The proper view of section 5301.06 then is that it gives three options whereby leases,

pertaining to property in Ohio, but executed in foreign states, may have validity:

1. The lease may be "executed **and** acknowledged" by the lessor in conformity with the laws of the state of signing; OR

2. The lease may be "proved" outside of Ohio in conformity with the laws of the state of signing; OR

3. The lease may be executed outside of Ohio but "in conformity with the laws of" Ohio.

Ohio Rev. Code § 5301.06 (1953).

### a. Option 1 – Lease Executed and Acknowledged by the Lessor in Conformity with the Laws of the State of Signing

Plaintiffs do not satisfy option 1 as stated above. (*See* Doc. 16, Re. in Opp. at 1

(admitting lack of acknowledgment)). Plaintiffs argue, however, that "§ 5301.06 will deem valid

a form of execution done 'according to either the law of Ohio or the law of the state where such

act was performed.'" (Doc. 18, P. Reply at 1 (quoting *Shoney's, Inc. v. Winthan Props.*, No.:

01AP-145, 2001 Ohio App. LEXIS 5566, *12 (Dec. 13, 2001))). But the full sentence from

*Shoney's*, partially quoted by Plaintiffs, reads, "Accordingly, we conclude that the meaning of

'executed and acknowledged' under the statute refers to the act of each party <u>signing and</u>

<u>acknowledging</u> an instrument of writing for the conveyance of land according to either the law of

Ohio or the law of the state where such act was performed." *Shoney's*, 2001 Ohio App. LEXIS

5566, *12 (emphasis added). Nothing in *Shoney's* supports the view that Ohio law accepts

leases executed in conformity with the requirements of other states without also requiring that

8

the lease be "acknowledged" or "proved." *See* Ohio Rev. Code § 5301.06. Nor does other Ohio precedent support Plaintiffs' view.

In no modern case, for instance, does an Ohio court address what happens when a lease (or other document subject to the requirements of section 5301.01) is signed but not acknowledged, outside of Ohio, in compliance with the laws of the state where it is signed. *Haren v. Yonak*, 2002-Ohio-2784, at ¶ 2 (Ct. App.) (holding that a deed, notarized and witnessed in West Virginia was valid as it was executed outside of Ohio but "in conformity with the laws of" Ohio); *Shoney's*, 2001 Ohio App. LEXIS 5566, *7-8 (documents at issue were notarized); *Zeppernick v. PNC Bank Nat'l Ass'n*, No. 99 C.A. 7, 2000 Ohio App. LEXIS 3987, *21-23 (Aug. 22, 2000) (finding a genuine issue of fact as to whether a mortgage and amendments thereto were executed in Pennsylvania or Ohio and thus whether, under section 5301.06, Pennsylvania or Ohio law applies to the concededly signed and acknowledged documents); *MIF Realty L.P. v. K.E.J. Corp.*, Case No.: 94WD059, 1995 Ohio App. LEXIS 2082, *7-9 (May 19, 1995) (concluding that a mortgage assignment was acknowledged and, because it complied with New York law, by virtue of 5301.06, it was valid under Ohio law). The only case the Court could find with such a fact pattern was a 1934 case from the Ohio Court of Common Pleas. *Muhlbach v. Stewart*, 3 Ohio Op. 126 (C.P. 1934).

In *Muhlbach*, the defendants owned land in Ohio and executed an oil and gas lease in favor of plaintiffs. *Id.* at 127. The plaintiffs were to commence drilling, under the lease, within 60 days and would, thereafter, have the right to drill the property as long as they continued to do so with reasonable diligence. *Id.* at 127-28. When the plaintiffs failed to drill within 60 days, the lessors signed an extension of the lease giving the plaintiffs an additional 60 days. *Id.* at 129. This extension was neither witnessed nor acknowledged and was signed in Ripon, California. *Id.*

9

Notwithstanding having granted this extension, and notwithstanding plaintiff-lessees' actions in reliance upon the same, the lessor-defendants, during the extension, contracted with other drillers to sink wells on the property. *Id.* at 129. Finding themselves the subject of suit, lessors took the position that the extension was invalid for, among other reasons, failure to comply with a predecessor of section 5301.01. *Id.* at 130. The court explained:

> It is claimed by defendants that the addition of this language has no force or validity in law for the reason that it is not signed in accordance with the provisions of Section 8510, General Code [predecessor to Ohio Rev. Code § 5301.01]. This language was added to this original lease by the lessors in California. By Section 8516, General Code [predecessor to Ohio Rev. Code § 5301.06], it is provided that, "All deeds, mortgages, powers of attorney, and other instruments of writing for the conveyance or encumbrance of lands, tenements or hereditaments situated within this state, executed and acknowledged or proved in any other state, territory or country, in conformity with the laws of such state, territory or country, or in conformity with the laws of this state, shall be as valid as if executed within this state, in conformity with the foregoing provisions of this chapter."

> The law of California does not require an instrument of this nature to be witnessed; neither does it require that it be acknowledged. Having therefore been executed according to the law of California it is valid in Ohio.

*Id.* The *Muhlbach* court, however, then immediately explained that the above statement was *dicta*, by stating, "Furthermore, in Ohio the extension of a lease is not regarded as a lease, and need not conform to the Ohio statute specifying how a deed or lease shall be executed." *Id.* In short, neither the text of the statute nor the caselaw provides any substantial support for Plaintiffs' view – that an unacknowledged lease has validity in Ohio even if it complies with the laws of a foreign state.

Thus, because Plaintiffs-lessors did not acknowledge the lease, they do not satisfy option 1. (*See* Doc. 16, P. Re. in Opp. at 1 (admitting lack of acknowledgment)).

### b. Option 2 – Lease "Proved" Outside Ohio in Conformity with the Laws of the State of Signing

In the context of real-estate documents, in both Ohio and New York, a document is "proved" if it is witnessed. For instance, in *Citizens National Bank v. Denison*, the Ohio Supreme Court, explaining the import of section 8510, Ohio General Code (predecessor to section 5301.01, Ohio Revised Code), remarked that, under Ohio law, deeds could not be recorded unless they were "acknowledged or proved by attesting witnesses . . . ." 133 N.E.2d 329, 332 (Ohio 1956); *see also Galetta v Galetta*, 991 N.E.2d 684, 687 (N.Y. 2013) (explaining that, in New York, a deed can be "'proved' by use of a subscribing witness"); *New York C. & H. R.R. v. Brockway Brick Co.*, 53 N.E. 209, 210 (N.Y. 1899) (remarking, "all and every . . . writings whatsoever relating to the title or property of any . . . lands . . . being duly acknowledged by the party or parties executing the same, or duly proved by one or more of the subscribing witnesses to the execution thereof . . ."); *Johnston's Lessee v. Haines*, 2 Ohio 55, 55 (Ohio 1825) (observing that "the execution of all deeds for the conveyance of lands should be acknowledged by the grantor, or proved by the subscribing witnesses"); *Fifth Third Bank v. Farrell*, 2010-Ohio-4839, at ¶¶ 24-30 (Ct. App.) (quoting *Denison*, with approval). Moreover, as mentioned above, 5301.01 and 5301.06 were enacted simultaneously in 1953. *See* Ohio Rev. Code § 5301.01 (effective Oct. 1, 1953) *and* Ohio Rev. Code § 5301.06 (effective Oct. 1, 1953). Section 5301.01, as enacted in 1953, provided two guarantees against fraud – acknowledgment (notarizing or similar measures) and witnesses. Section 5301.06, enacted in 1953 as a companion to 5301.01, rather than require out-of-state signers to comply with both guarantees against fraud – acknowledgement and witnesses – instead provided them with a choice: Out-of-state signers, so long as they complied with the law of the signing state, could either

11

acknowledge the document or have witnesses. The term "proved" in section 5301.06 referred then, and still now refers to, witnesses.

In this case, it is undisputed that the lessor executed this lease in New York without subscribing witnesses and thus, the lease is not "proved" under 5301.06. (*See* Doc. 13, Ex. 1, Lease at 18 (signature page contains no subscribing witnesses' signatures)).

### c. Option 3 – Lease Executed Outside of Ohio but in Conformity with the Laws of Ohio

"Plaintiffs concede that their signatures on the lease, as landlords, are not acknowledged." (Doc. 16, P. Re. in Opp. at 1). Accordingly, since Ohio Revised Code, section 5301.01 requires acknowledgment, the lease was not executed "in conformity with the laws of" Ohio. Ohio Rev. Code § 5301.01. Thus, Plaintiffs cannot satisfy option 3.

### 3. Consequences of Failing to Comply with the Statute of Conveyances

Plaintiffs-lessors neither "acknowledged" nor had subscribing witnesses to the lease. Thus, they did not satisfy Ohio Revised Code, sections 5301.01 and 5301.08 in that those laws require leases having terms in excess of three years be acknowledged. Moreover, though Plaintiffs-lessors signed in New York and complied (the Court assumes) with the requirements of New York law, because they neither acknowledged nor had witnesses to the lease, they also failed the proof or acknowledgment requirements of Ohio Revised Code, section 5301.06. The question now is: What is the consequence of Plaintiffs' failures?

The Ohio Supreme Court has made clear that compliance with the statute of conveyances, including sections 5301.01 and, if applicable, 5301.06, is "mandatory" and "necessary to create a valid lease." *Delfino v. Paul Davies Chevrolet, Inc.*, 209 N.E.2d 194, 196 (Ohio 1965). Consequently, "a defectively executed lease is invalid and does not operate to convey the estate or create the term of leasehold sought to be created thereby." *Id.* (citing *Wineburgh v. Toledo Corp.*, 181 N.E. 20, syllabus ¶ 1 (Ohio 1932); *Richardson v. Bates*, 8 Ohio St. 257 (1858)).

12

Thus, in this case, the lease document is invalid to convey the term of the lease purportedly conveyed due to failure to comply with the statute of conveyances.

### C. Term of the Implied Lease

Plaintiffs argue that, in the event the Court concludes (as it now has) that the written lease in this case was defective, the parties performance on the lease means a lease of periodic tenancy should be implied. (Doc. 14, P. Mot. for SMJ at 8 (citing *Delfino*, 209 N.E.2d at 199)). Defendants agree and, indeed, go so far as to state, "It is well settled that where a lessee takes possession under a defectively-executed lease and pays rent, a tenancy will be implied and is subject to all of the terms of the purported lease except duration." (Doc. 17, D. Re. in Opp. at 4 n.1 (citing *B&O R.R. v. West*, 49 N.E. 344, 345 (Ohio 1897))). The Court agrees with the authorities cited by the parties. The remaining question is: What periodic tenancy should be implied?

> The Ohio Supreme Court held in 1897 that it was already
>
> well settled . . . that where the lessee enters into possession of the demised premises under a lease for a term of years at an annual rent, if the lease for any cause be void he becomes a tenant for a year at the rent reserved in the lease, and subject to all of its provisions, except its duration . . . ; and this is so, though the rent be payable quarterly, or monthly, or at shorter periods.

*B&O R.R.*, 49 N.E. at 345; *accord Wineburgh*, 181 N.E. at 21 (finding the stated term of a lease void for failure to comply with the requirements of a predecessor of section 5301.01 but finding against the landlord's attempts to collect on the implied year term because he had mistakenly sued at law rather than in equity); *Cesta v. Manfredi*, 655 N.E.2d 755, 755-57 (Ohio Ct. App. 1995) (finding a five-year lease void for failure to comply with section 5301.01 and implying a year-to-year period because the lease provided for annual rent).

In this case, the lease unambiguously provides for "an annual base rental of $330,020.00 payable in equal monthly installments of $27,501.67 . . . ." (Doc. 13, Ex. 1, Lease at 1). This

13

amount was to be adjusted on a set schedule throughout the term of the lease, but it is consistently called "an annual base rental" within the lease. *Id.* Accordingly, this lease, though it failed to comply with sections 5301.01 and 5301.06, is fully enforceable except with respect to its term. In place of the 15-year term, the Court implies a lease term of one year which renewed year-to-year at the rent specified by the lease.[3]

The commencement date of the lease is variable, according to the lease terms, depending on such things as the delivery date of the premises and the date the lessee opened for business. (Doc. 13, Ex. 1, Lease at 1). However, in the absence of these variable considerations, the stated date is October 15, 2003. *Id.* The uncontroverted evidence in the summary judgment record is that October 15, 2003, was, indeed, the commencement date. (Doc. 14, Ex. 1, Chait Aff. at ¶ 7). At that point, however, another lease term comes into operation and this, presumably for administrative simplicity, deems the commencement date as the first day of the following month. (Doc. 13, Ex. 1, Lease at 1). Accordingly, the lease in this case was a year-to-year periodic tenancy beginning each November 1 and finishing each October 31.[4]

## VI.    CONCLUSION

Plaintiff's motion for partial summary judgment is **GRANTED IN PART and DENIED IN PART**; Defendants' motion for partial summary judgment is **GRANTED IN PART and DENIED IN PART**. The lease was valid as a year-to-year tenancy commencing November 1 of each year and terminating October 31 of each year.

The Clerk is directed to **REMOVE** documents 14 and 15 from the Court's pending motions list.

---

[3] Plaintiffs argue that additional expenses for maintenance and taxes, but characterized as rents, are elsewhere set forth in the lease and are owed to them. (Doc. 14, P. Mot. for SMJ at 9-10; Doc. 13, Ex. 1, Lease at 10-11). The parties have not, however, meaningfully briefed the issue of damages and the Court will not, therefore, address it at this juncture.

[4] Because the parties have not briefed the issue of damages, the Court shall not, at this juncture, attempt to determine the precise measure of damages or apportion damages between Defendants.

The parties sought this opinion to narrow the issues in the case in the hope that, once narrowed, the parties might find it possible to settle.  If, in light of this opinion, the parties wish to engage in mediation or other settlement-related activities, the Court will, upon joint motion of the parties, schedule such proceedings as may be helpful to the resolution of the case.  If, on the other hand, the parties find themselves unable to reach a settlement, the Court will schedule briefing on the remaining issues in the case.  The parties are therefore **ORDERED** to submit to the Court's chambers a joint status report within two weeks of the date of this Order.  This report should apprise the Court as to the status of settlement negotiations, what measures, if any, the parties would like the Court to take in aid of such negotiations, and whether, settlement talks being exhausted, a briefing schedule on the remaining issues in the case should be ordered.

**IT IS SO ORDERED.**

2-25-2014
**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

15